1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

PREVAIL LEGAL, INC.,

    Plaintiff,

  v.

JUSTIN GORDON, et al.,

    Defendants.

Case No.  20-cv-07173-BLF

**ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS WITHOUT
PREJUDICE**

[Re:  ECF 17]

On October 14, 2020, Plaintiff Prevail Legal, Inc. ("Prevail"), a Delaware corporation with its principal place of business in Santa Clara, California, filed an action for damages, injunctive relief and declaratory relief for (1) violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(g); (2) violation of California Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502; and (3) conversion against Defendants ShakaCode, LLC ("Shakacode"), a limited liability company based in Hawaii, and Justin Gordon, the sole owner and manager of ShakaCode (collectively, "Defendants"). *See* ECF 1, Compl.

Before the Court is Defendants' Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(2), (3), and (6). *See* Mot., ECF 17. The Court held a hearing on this motion on April 29, 2021. For the reasons discussed at the hearing and below, the Court GRANTS Defendants' motion to dismiss for lack of personal jurisdiction and DISMISSES the case WITHOUT PREJUDICE for refiling in Hawaii.

## I.   BACKGROUND

Prevail is a cloud-based deposition testimony management platform with a principal place of business in Santa Clara, California. Compl. ¶ 2, ECF 1. Prevail uses artificial intelligence and machine learning to provide real-time transcriptions of testimony, essentially automating the

United States District Court
Northern District of California

1   functions of a court reporter. Compl. ¶ 2. Around July 2019, Prevail asked Defendant ShakaCode

2   to develop the critical upload software for "voice diarization," which allows the software code to

3   distinguish between different speakers when translating voice into text. Decl. of Robert

4   Feigenbaum ("Feigenbaum Decl.") ¶¶ 5-6, ECF 21-1. Defendants submitted a proposed contract to

5   Prevail at Prevail's California address. Feigenbaum Decl. ¶ 3; *see also* Ex. A, Agreement, ECF

6   21-1. The draft contract proposed that Hawaii law would govern. Agreement ¶ 31. Prevail refused

7   to sign the Agreement. Feigenbaum Decl. ¶ 3. However, the parties went forward without a

8   written contract. Around August 2019, Prevail paid Defendant ShakaCode's first invoice of

9   approximately $10,000. Compl. ¶ 11. Due to alleged disputes, Prevail has not paid the remaining

10  balance of the invoices from Defendant ShakaCode. Compl. ¶ 11.

11        Prevail had an account with GitHub, a cloud-based development platform widely used by

12  software developers. Compl. ¶ 8. GitHub is a subsidiary of Microsoft, and its main office is in San

13  Francisco. Feigenbaum Decl. ¶ 7. Between approximately July 2019 through March 2020,

14  Defendant ShakaCode developed software code for Prevail, and Defendant ShakaCode delivered

15  the software code to Prevail through Prevail's GitHub account. Compl. ¶ 9. Prevail alleges that it

16  "developed two other 'branches' of software code" that were dependent on the software code

17  Defendant ShakaCode had developed and delivered to Prevail. Compl. ¶ 10.

18        On March 13, 2020, at approximately 4:00 p.m., the username "gonzalog" deleted the

19  software code that Defendant ShakaCode had developed and delivered to Prevail on GitHub, and

20  Prevail alleges on information and belief that this action was authorized by Defendants. Compl. ¶

21  12; Feigenbaum Decl., Ex. B, Github History, ECF 21-1. Prevail alleges that, on behalf of

22  Defendant ShakaCode, an attorney named John Sparks communicated with Prevail's CEO and

23  offered to return the software code Prevail needed to launch its web-based platform if Prevail paid

24  the disputed invoices in full. Compl. ¶ 13, Feigenbaum Decl. ¶ 14. Prevail asserts that the actions

25  of Defendants ShakaCode and Gordon caused Prevail's product launch to be delayed, which

26  resulted in financial damage to Prevail. Compl. ¶ 14. Prevail alleges that it had to develop its own

27  "critical software" code to launch. Feigenbaum Decl. ¶ 15.

28        On August 28, 2020, Defendants filed a complaint Hawaii state court against Prevail, CEO

1  Robert Feigenbaum, and Randy Bares for nonpayment of goods and services and other alleged

2  tortious conduct. Decl. of Skylar G. Lucas ("Lucas Decl.") ¶ 4, ECF 17-1; *see also* Lucas Decl.,

3  Ex. 1, Hawaii Compl., ECF 17-1. Around September or October 2020, Bares, Prevail's Chief

4  Technology Officer, discovered that the location of the Github server where Prevail's code had

5  been deleted was in Hayward, California. Decl. of Randy Bares ("Bares Decl.") ¶¶ 2-3. ECF 21-2.

6  Prevail filed this suit on October 14, 2020. *See* Compl.

7  ## II.    LEGAL STANDARD

8  Federal Rule of Civil Procedure 12(b)(2) allows a defendant to seek dismissal of an action

9  for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). "In opposing a defendant's motion

10  to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that

11  jurisdiction is proper." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir.

12  2011). Courts may consider evidence presented in affidavits and declarations in determining

13  personal jurisdiction. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). "Where, as here,

14  the defendant's motion is based on written materials rather than an evidentiary hearing, the

15  plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to

16  dismiss." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (internal quotation marks and

17  citation omitted).

18  "Uncontroverted allegations in the complaint must be taken as true, and factual disputes

19  are construed in the plaintiff's favor." *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905

20  F.3d 597, 602 (9th Cir. 2018). If, however, the defendant adduces evidence controverting the

21  allegations, the plaintiff must "come forward with facts, by affidavit or otherwise, supporting

22  personal jurisdiction," *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986), for a court "may not

23  assume the truth of allegations in a pleading which are contradicted by affidavit." *Data Disc, Inc.*

24  *v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977). Additionally, conclusory

25  allegations or "formulaic recitation of the elements" of a claim are not entitled to the presumption

26  of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). "Nor is the court required to accept as true

27  allegations that are . . . unwarranted deductions of fact, or unreasonable inferences." *In re Gilead*

28  *Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

When no federal statute governs personal jurisdiction, the district court applies the law of the forum state. *See* Fed. R. Civ. P. 4(k)(1)(A) (service of process is effective to establish personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located"). "California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Cal. Civ. Proc. Code Ann. § 410.10). Constitutional due process, in turn, requires that a defendant "have certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Freestream Aircraft*, 905 F.3d at 602 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

"The strength of contacts required depends on which of the two categories of personal jurisdiction a litigant invokes: specific jurisdiction or general jurisdiction." *Ranza*, 793 F.3d at 1068 (citing *Daimler AG*, 571 U.S. at 127). General jurisdiction exists when the defendant's contacts "are so continuous and systematic as to render [it] essentially at home in the forum State." *Daimler AG*, 571 U.S. at 127 (internal quotation marks omitted). Where a defendant is subject to general jurisdiction, it may be sued "on any and all claims," *id.* at 137, including claims "arising from dealings entirely distinct" from its forum-related activities, *id.* at 127 (internal quotation marks omitted). In contrast, specific jurisdiction is proper when the defendant's contacts with the forum state are more limited but the plaintiff's claims "arise out of or relate to" those contacts. *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cnty.*, 137 S. Ct. 1773, 1786 (2017).

## III.   DISCUSSION

Defendants move to dismiss Prevail's complaint for lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted. The Court agrees that it lacks personal jurisdiction over Defendants and therefore need not reach the arguments regarding venue and failure to state a claim.

Defendants, both located in Hawaii, argue that this Court lacks personal jurisdiction over them. Mot. 5-8. Prevail argues that the Court has specific personal jurisdiction based on

1   Defendants' knowledge that Prevail is located in California and their efforts to access Prevail's

2   GitHub account on a server in California. Opp'n 7-10. The Court finds that it lacks specific

3   jurisdiction over Defendants under the "purposeful direction" test established in *Calder v. Jones*,

4   465 U.S. 783 (1984).

5         Since Prevail does not argue for general personal jurisdiction, the Court considers whether

6   it has specific personal jurisdiction over the Defendants. *See* Opp'n 6 n.3. Courts in the Ninth

7   Circuit employ a three-prong test when determining whether a nonresident defendant may be

8   subject to specific personal jurisdiction in a forum:

9

10         (1) The non-resident defendant must purposefully direct his activities or consummate some
      transaction with the forum or resident thereof; or perform some act by which he purposefully

11         avails himself of the privilege of conducting activities in the forum, thereby invoking the
      benefits and protections of its laws; (2) the claim must be one which arises out of or relates

12         to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport
      with fair play and substantial justice, i.e. it must be reasonable.

13   *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). "If any of the three

14   requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process

15   of law." *Pebble Beach v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006) (citation omitted).

16         Prevail carries the burden of satisfying the first two prongs. *NetApp, Inc. v. Nimble*

17   *Storage, Inc.,* 41 F. Supp. 3d 816, 824–25 (N.D. Cal. 2014) (quoting *Sher v. Johnson*, 911 F.2d

18   1357, 1361 (9th Cir.1990)). If Prevail does so, then the burden shifts to Defendants to "set forth a

19   'compelling case' that the exercise of jurisdiction would not be reasonable." *CollegeSource*, 653

20   F.3d at 1076 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

21       **A.**    **Purposeful Direction**

22         Under the first prong, courts apply the purposeful direction or "effects test" to tort-related

23   conduct, which requires that the defendant has allegedly (1) committed an intentional act, (2)

24   expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be

25   suffered in the forum state." *Hungerstation LLC v. Fast Choice LLC*, No. 19-CV-05861-HSG,

26   2020 WL 137160, at *4 (N.D. Cal. Jan. 13, 2020), *aff'd*, No. 20-15090, 2021 WL 963777 (9th Cir.

27   Mar. 15, 2021). The effects test is derived from the Supreme Court's decision in *Calder v. Jones*,

28

United States District Court
Northern District of California

5

465 U.S. 783 (1984), which "stands for the proposition that purposeful availment is satisfied even by a defendant whose only contact with the forum state is the purposeful direction of a foreign act having effect in the forum state." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (internal quotation marks and citation omitted). This test looks "to the defendant's contacts with the forum state itself, not the defendant's contacts with the persons who reside there." *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015) (internal quotations and citations omitted). "[M]ere injury to a forum resident is not a sufficient connection to the forum" and "an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." *Id.* (internal quotations and citations omitted).

### i.   Intentional Act

"The first part of the effects test requires 'an intent to perform an actual physical act in the real world, rather than an intent to accomplish a result or consequence of that act.'" *NetApp*, 41 F. Supp. 3d at 825 (quoting *Schwarzenegger*, 374 F.3d at 806). "The meaning of the term 'intentional act' in our jurisdictional analysis is essentially the same as in the context of intentional torts; namely, the defendant must act with the 'intent to perform an actual, physical act in the real world.'" *Picot*, 780 F.3d at 1214 (quoting *Schwarzenegger*, 374 F.3d at 806). The Ninth Circuit has found this part of the effects test is easily satisfied, *see Picot*, 780 F.3d at 1214, and the Court finds similarly in this case.  Here, Prevail alleges and submits supporting declarations and exhibits that agents of ShakaCode, including Gordon and "gonzalog", "intentionally" accessed Prevail's GitHub account and deleted data without authorization. Compl. ¶¶ 18, 22-25; Feigenbaum Decl. ¶¶ 4, 9, 13-14; Ex. B, Github History. Defendants concede that "the alleged deletion of a branch of software may be considered an intentional act." Reply 4, ECF 23. The Court finds that Plaintiffs have sufficiently alleged that Defendants intended to perform an actual, physical act in the real world—deleting data without authorization. Thus, the Court finds that this part of the effects test is satisfied.

### ii.   Expressly Aimed at the Forum State

The second part of the purposeful direction test turns on whether Defendants "expressly aimed" their intentional acts at California. The express aiming inquiry requires "something more"

than a foreign act with foreseeable effects in the forum state. *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 675 (9th Cir. 2012) ("We have held that *Calder* 'cannot stand for the broad proposition that a foreign act with foreseeable effects in the forum state always gives rise to specific jurisdiction.'" (citation omitted)). "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden v. Fiore*, 571 U.S. 277, 286 (2014) (citations omitted).

Prevail argues that the following alleged contacts satisfy the personal jurisdiction requirement: Prevail's principal place of business is Santa Clara, California; Defendants ShakaCode and Gordon knew that Prevail was located in California, because they tried to get Prevail to sign a written contract (which Prevail refused) addressed to Prevail in California; Defendants used GitHub to deliver software code to Prevail; Github's main office is in San Francisco and the server hosting the code was located in Hayward, California; a person allegedly working for Defendants deleted Prevail's software code; and an attorney for Defendant Shakacode allegedly reached out via telephone and email to Prevail's CEO, who was in California. Opp'n 8-9. Prevail cites to *NetApp* and *Facebook, Inc. v. ConnectU LLC*, 489 F. Supp. 2d 1087 (N.D. Cal. 2007) as support for its argument that, "it is not essential that ShakaCode or Gordon actually know that Prevail was located in California, but the fact is that they had to have known that Prevail was in California, and the impact of their actions would be felt in California." Opp'n 10. These contacts support Prevail's two primary arguments for jurisdiction: 1) Defendants accessed a server owned by a third party that happened to be based in or have a server in California; and 2) and negotiations with Prevail occurred in California: a contract was sent to Prevail in California, and Defendant Shakacode's attorney reached out to Prevail's CEO in California after the code was deleted to negotiate the return of the code in exchange for payment of the disputed invoices. Opp'n 2, 7-10.

Defendants argue that, with respect to the "express aiming" prong of the effects test, "something more" is required than a "foreign act with foreseeable effects in the forum state," *see Washington Shoe*, 704 F.3d at 675. Mot. 7. Further, Defendants argue that when the Court looks to

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Defendants' contacts with the forum state itself, not Defendants' contacts with the entity that resides

2    there (Prevail), there is no personal jurisdiction because Defendants did not purposely direct any

3    conduct to California. Mot. 7. Defendants cite *Walden* for the proposition that "the plaintiff cannot be

4    the only link between the defendant and the forum," *Walden*, 571 U.S. at 285. Reply 4.

5           The Court finds that the connections cited by Prevail are too random, fortuitous, and

6    attenuated to establish that Defendants have purposefully directed their activities at California—

7    which is distinct from purposefully directing their activities at Prevail—such that it would be

8    reasonable to hale Defendants into court in this forum. The Court will analyze Prevail's server-

9    based arguments and negotiation-based argument separately.

10                  **a.  The Location of the Third-Party Server Cannot Form the Basis for
                           Personal Jurisdiction**

11          The location of the server owned by GitHub, a third party, does not establish personal

12   jurisdiction. Courts in this circuit have held that the mere location of a third party or its servers is

13   insufficient to give rise to personal jurisdiction. *See Hungerstation*, 2020 WL 137160, at *4–5; *see

14   also Republic of Kazakhstan v. Ketebaev*, No. 17-CV-00246-LHK, 2017 WL 6539897, at *7 (N.D.

15   Cal. Dec. 21, 2017) ("The mere fact that Google—the company that owns the servers—is

16   headquartered in California is not enough to establish that Khrapunov, a Kazakh citizen who

17   resides in Switzerland, expressly aimed his alleged conduct at California."); *Rosen v. Terapeak,

18   Inc.*, No. CV-15-00112-MWF (EX), 2015 WL 12724071, at *9 (C.D. Cal. Apr. 28, 2015) (holding

19   the fact that images at issue came from eBay and were taken off eBay's servers located in

20   California was not sufficient to give rise to personal jurisdiction); *Man-D-Tec, Inc. v. Nylube

21   Products Co., LLC*, No. CV-11-1573-PHX-GMS, 2012 WL 1831521, at *2 (D. Ariz. May 18,

22   2012) ("If the mere location of a server could create personal jurisdiction, any state where a server

23   is located would have personal jurisdiction over any user of that server"); *Browne v. McCain*, 612

24   F. Supp. 2d 1118, 1124 (C.D. Cal. 2009) (no jurisdiction over a defendant merely because of

25   relationship with California-based YouTube, as presence of YouTube's servers in California was

26   insufficient to establish personal jurisdiction); *Doe v. Geller*, 533 F. Supp. 2d 996, 1009 (N.D. Cal.

27   2008) ("Such broad jurisdiction, premised solely on the happenstance that many internet

28

1    companies that are not even parties to [the] litigation have offices in Silicon Valley, is

2    unreasonable.").

3         *Hungerstation* is analogous to this case. 2020 WL 137160. *Hungerstation* involved

4    allegations of the Saudi Arabia-based defendants using "their then-valid Hungerstation credentials

5    to wrongfully access, copy, and steal Hungerstation's GitHub repositories of copyrighted and

6    proprietary source code" and then allegedly storing the "copycat source code on GitHub's U.S.

7    servers." 2020 WL 137160, at *1. The Court dismissed the case for lack of personal jurisdiction,

8    stating, "Under Plaintiff's theory, the Northern District of California always would have

9    jurisdiction in any case where a party hosts its data with a Silicon Valley company, even when that

10   company is not a party to the litigation." 2020 WL 137160, at *8. For the same reason, the Court

11   finds personal jurisdiction based on the GitHub server location improper in this case.

12        Prevail cites to *NetApp* in support of its arguments for personal jurisdiction. Opp'n 2, 9-10.

13   In *NetApp*, the court found specific personal jurisdiction over an individual defendant because he

14   deliberately accessed NetApp's proprietary databases to take information after performing work

15   for NetApp and received repeated notices of access restrictions. *NetApp*, 41 F. Supp. 3d at 826.

16   However, several factual differences distinguish this case from *NetApp*: the defendant received

17   multiple notices that the plaintiff and its computer systems were located in California; he accessed

18   the plaintiff's computer knowing it was located in California; he accepted a license agreement that

19   was deemed to be executed in California and was governed by California law. *NetApp*, 41 F.

20   Supp. 3d at 825-26. The *NetApp* court found that the defendant had, "at minimum, reason to know

21   that he was accessing NetApp's computer systems in California." *Id.* at 826.

22        Here, regarding Prevail's server-based argument, the Court finds it "random" that the

23   GitHub server hosting Prevail's software code happened to be in California—indeed, it appears

24   that Prevail only learned this fact after conducting an investigation. Barnes Decl. ¶¶ 2-3. There is

25   no evidence or allegations that Defendants knew or had reason to know that the GitHub servers

26   hosting the software code were in California, which is in contrast to *NetApp*, where *NetApp* owned

27   the servers in question, eliminating any third party, and the plaintiff received repeated notice that

28   NetApp and its servers were located in California. *NetApp*, 41 F. Supp. 3d at 825. Additionally,

United States District Court
Northern District of California

United States District Court
Northern District of California

1  *NetApp* did not consider *Walden*, the Supreme Court case that had been decided only shortly

2  before the *NetApp* order, and the same court that decided *NetApp* has since found that "[t]he mere

3  fact that [a third party]—the company that owns the servers—is headquartered in California is not

4  enough to establish that [the defendant, a non-California citizen]… expressly aimed his alleged

5  conduct at California. *Ketebaev*, 2017 WL 6539897, at *7. Accordingly, the Court does not find

6  that *NetApp* supports Prevail's arguments for personal jurisdiction based on the server-related

7  activity.

8       In conclusion, the Court finds that California location of the GitHub server Defendants

9  allegedly accessed cannot form the basis for personal jurisdiction.

10       **b. Defendants' Other Alleged Contacts with Prevail in California Cannot Form the Basis for Personal Jurisdiction**

11

12       Prevail argues that Defendants expressly aimed their acts at California because "they had

13  to have known that Prevail was in California, and the impact of their actions would be felt in

14  California." Opp'n 10. Prevail argues that Defendants addressed a proposed contract, governed by

15  Hawaii law, to Prevail's California address. Opp'n 8, Feigenbaum Decl. ¶ 3. Prevail admits the

16  contract was never operative because Prevail refused to sign it. Opp'n 8, Feigenbaum Decl. ¶ 3.

17  Prevail also alleges that an attorney for Defendant Shakacode allegedly reached out via telephone

18  and email to Prevail's CEO, who was in California, to negotiate the return of the deleted software

19  code in exchange for the payment of the disputed invoices. Opp'n 8-9; Feigenbaum Decl. ¶ 14.

20  The Court finds that these contacts are insufficient for personal jurisdiction under the Supreme

21  Court's decision in *Walden*. "[A] defendant's contacts with the forum State may be intertwined

22  with his transactions or interactions with the plaintiff or other parties. But a defendant's

23  relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."

24  *Walden*, 571 U.S. 277 at 286.

25       *NetApp* does not support Prevail's argument here. In *NetApp*, there was an accepted end

26  usage license agreement that was deemed executed in California and governed by California law.

27  *NetApp*, 41 F. Supp. 3d at 825-26. Here, there is an unsigned contract, governed by the laws of

28  Hawaii, that listed Prevail's California address, and Prevail refused to sign it, so it was never

1   operative. Opp'n 8; Agreement ¶ 31. The Court finds this materially different than the operative

2   end usage license agreement that formed part of the basis for personal jurisdiction in *NetApp*.

3   Prevail has also not cited a single authority establishing that communications from a lawyer (with

4   no details about the frequency of those communications) to a plaintiff in a forum state are enough

5   to establish personal jurisdiction in that state. As the Supreme Court has established, "the plaintiff

6   cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 285; *see also*

7   *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1208 (9th Cir.

8   2006) (holding that a cease and desist letter is not in and of itself sufficient to establish personal

9   jurisdiction over the sender of the letter).  The Court finds that the alleged negotiations, none of

10  which led to an operative agreement, do not form the basis for personal jurisdiction.

11          Prevail also cites to *Panavision Int'l, L.P. v. Toeppen*, where the Ninth Circuit Court found

12  that the defendant directed his activity toward the forum state because he "engaged in a scheme to

13  register Panavision's trademarks as his domain names for the purpose of extorting money

14  from Panavision. His conduct, as he knew it likely would, had the effect of injuring Panavision in

15  California where Panavision has its principal place of business and where the movie and television

16  industry is centered." 141 F.3d 1316, 1322 (9th Cir. 1998), *holding modified by Yahoo! Inc. v. La*

17  *Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006). *Panavision* predates

18  the maturation of the internet, *Walden, Washington Shoe*, and the refinement of the specific

19  personal jurisdiction inquiry, and the Court finds *Panavision* distinguishable from this case.

20          The *Panavision* court noted that "[t]he brunt of the harm to Panavision was felt in

21  California. Toeppen knew Panavision would likely suffer harm there because, although at all

22  relevant times Panavision was a Delaware limited partnership, its principal place of business was

23  in California, and the heart of the theatrical motion picture and television industry is located

24  there." *Panavision*, 141 F.3d at 1321. Here, Prevail's cloud-based platform that targets the legal

25  industry at large is not analogous to "the heart" of the entertainment industry that is necessarily in

26  California. More recent Ninth Circuit caselaw establishes that the express aiming inquiry requires

27  "something more" than an act with foreseeable effects in the forum state. *Washington Shoe*, 704

28  F.3d at 675 ("We have held that *Calder* 'cannot stand for the broad proposition that a foreign act

United States District Court
Northern District of California

11

with foreseeable effects in the forum state always gives rise to specific jurisdiction.'"). This case lacks the "something more" beyond the alleged deletion of code on a third-party server randomly located in California and fruitless negotiations that affected Prevail in California.

### B.    Conclusion

The Court concludes that Prevail fails to allege facts showing that Defendants purposefully directed their activities at California. Because this ground is sufficient to conclude that Prevail has not established specific personal jurisdiction, the Court need not address the remaining factors. *See Hungerstation*, 2020 WL 137160, at *6.

## IV.    ORDER

For the reasons discussion herein, Defendants' motion to dismiss for lack of personal jurisdiction is GRANTED. The Court dismisses the case WITHOUT PREJUDICE to Prevail re-filing in Hawaii state or federal court.

**IT IS SO ORDERED.**

Dated: May 14, 2021

_____
BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California